**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MONICA WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00192-RK |
| | ) | |
| ROBERT WILKIE, SECRETARY, | ) | |
| DEPARTMENT OF VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Suggestions in Support Incorporated)**

Respectfully submitted,

Timothy A. Garrison
United States Attorney

By:

Jerry L. Short, MO #26318
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3130
Facsimile: (816) 426-3165
Email: jerry.short@usdoj.gov
ATTORNEY FOR DEFENDANT

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

SUGGESTIONS IN SUPPORT

I.      PLAINTIFF'S ADMINISTRATIVE EEO CLAIMS .................................... 2

II.     NEW CLAIMS ALLEGED IN CIVIL ACTION ......................................... 3

III.    STATEMENT OF FACTS .......................................................................... 4

IV.     ARGUMENT

        A.      Legal Standards

                1.      Standard for Summary Judgment .............................................. 11

                2.      Burden of Proof Framework ..................................................... 12

        B.      Plaintiff failed to timely exhaust administrative remedies regarding claims
                of disparate treatment, racial harassment and retaliation ..................................... 13

        C.      Plaintiff cannot establish a prima facie case of disparate treatment, race
                discrimination or retaliation because the alleged events did not constitute
                adverse employment actions action ..................................... 15

        D.      Summary judgment must be granted regarding Plaintiff's claim of
                discriminatory harassment based on her race because her supervisors' work
                related decisions and actions cannot be characterized as sufficiently severe
                and pervasive so as to cause a hostile work environment ..................................... 18

        E.      Plaintiff cannot establish a prima facie case of constructive discharge ............... 24

        F.      If the Court finds that Plaintiff has established a prima facie case regarding
                any claim, summary judgment is warranted because the decisions and
                actions of Plaintiff's supervisors were made for legitimate non-discriminatory
                reasons ..................................................................................................26

V.      CONCLSION .....................................................................................................28

CERTIFICATE OF SERVICE ............................................................................28

Case 4:17-cv-00192-RK   Document 49   Filed 04/05/19   Page 2 of 34

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030 (8th Cir. 2005) ................................................... 23

*Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858 (8th Cir. 2009) .............. 19, 21

*Arraleh v. Cty. of Ramsey*, 461 F.3d 967 (8th Cir. 2006) ............................................................ 21

*AuBuchon v. Geithner*, 743 F.3d 638 (8th Cir. 2014) ............................................................. 15, 17

*Bailey v. U.S. Postal Serv.*, 208 F.3d 652 (8th Cir. 2000) ........................................................... 13

*Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756 (8th Cir. 2004) ........................................... 22

*Baucom v. Holiday Companies*, 428 F.3d 764 (8th Cir. 2005) ................................................ 16, 17

*Blake v. MJ Optical Inc.*, 870 F.3d 820 (8th Cir. 2017) ......................................................... 24, 26

*Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1994) ...................................................................... 21

*Box v. Principi*, 442 F.3d 692 (8th Cir. 2006) ............................................................................ 16

*Bradley v. Widnall*, 232 F.3d 626 (8th Cir. 2000) ....................................................................... 23

*Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139 (8th Cir. 2007) ................................. 25

*Burkett v. Glickman*, 327 F.3d 658 (8th Cir. 2003) ..................................................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 11

*Coons v. Mineta*, 410 F.3d 1036 (8th Cir. 2005) ........................................................................ 13

*Cruzan v. Special Sch. Dist., No. 1*, 294 F.3d 981 (8th Cir. 2002) ............................................... 16

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ....................................................................... 13

*Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020 (8th Cir. 2004) ......................................... 14

*Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645 (8th Cir. 2003) ......................................... 22

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ................................................................ 20

*Fercello v. Cty. of Ramsey*, 612 F.3d 1069 (8th Cir. 2010) ............................................. 25, 26, 27

Case 4:17-cv-00192-RK   Document 49   Filed 04/05/19   Page 3 of 34

*Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536 (11th Cir. 1987) ................................................ 26

*Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041 (8th Cir. 2003) .................................................... 23

*Harris v. Forklift Systems*, 510 U.S. 17 (1993) .............................................................. 18, 19, 20

*Henthorn v. Capital Communications, Inc.*, 359 F.3d 1021 (8th Cir. 2004) ............................... 19

*Hervey v. County of Koochiching*, 527 F.3d 711 (8th Cir. 2008) ................................................. 21

*Highlander v. K.F.C. National Management Co.*, 805 F.2d 644 (6th Cir. 1986) ......................... 19

*Howard v. Burns Bros.*, 149 F.3d 835 (8th Cir. 1998) ................................................................. 25

*Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800 (8th Cir. 2013) .................. 23

*Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624 (8th Cir. 2016) ................................................. 18

*LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688 (8th Cir. 2001) ............................................ 15

*Landgraf v. USI Film Prods.*, 968 F.2d 427 (5th Cir.1992) ......................................................... 24

*LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098
(8th Cir. 2005) ........................................................................................................................... 20

*Lors v. Dean*, 595 F.3d 831 (8th Cir. 2010) ................................................................................ 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 11, 12

*McAlister v. Sec'y of Dep't of Health & Human Servs.*, 900 F.2d 157 (8th Cir. 1990) ............... 13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......................................................... 12

*Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990 (8th Cir. 2003) ...................................... 20

*Morgan v. U.S. Postal Serv.*, 798 F.2d 1162 (8th Cir. 1986) ...................................................... 13

*Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841 (8th Cir. 2006) ............................. 20

*O'Brien v. Dep't of Agric.*, 532 F.3d 805 (8th Cir. 2008) ...................................................... 24, 25

*Pa. State Police v. Suders*, 542 U.S. 129 (2004) ........................................................................ 24

*Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074 (8th Cir. 2006) ............................................... 17

*Pye v. Nu Aire, Inc.*, 641 F.3d 1011 (8th Cir. 2011) .................................................................... 27

Case 4:17-cv-00192-RK   Document 49   Filed 04/05/19   Page 4 of 34

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ..................................... 12, 26

*Rester v. Stephens Media, LLC*, 739 F.3d 1127 (8th Cir. 2014) .................................... 25

*Ricci v. DeStefano*, 557 U.S. 557 (2009) ............................................................. 11, 12

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847 (8th Cir. 2012) ............................... 14

*Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181 (8th Cir. 2014) .......................... 25

*Sallis v. Univ. of Minn.*, 408 F.3d 470 (8th Cir. 2005) ................................................ 16

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997) ............................................. 21

*Scott v. Harris*, 550 U.S. 372 (2007) ......................................................................... 11

*Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958 (8th Cir. 1999) ............................................ 23

*Shaver v. Indep. Stave Co.*, 350 F.3d 716 (8th Cir. 2003) ............................................ 16

*Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886 (8th Cir. 2005) ..................... 21, 22

*Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076 (8th Cir. 2010) ................................... 20

*Smith v. Goodyear Tire & Rubber Co.*, 895 F.2d 467 (8th Cir. 1990) ......................... 25

*Snell v. Suffolk County*, 782 F.2d 1094 (2d Cir. 1986) ............................................... 21

*Spears v. Missouri Dep't of Corrections and Human Resources*, 210 F.3d 850
(8th Cir. 2000) ......................................................................................................... 18

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ................................................. 12

*Sutherland v. Missouri Department of Corrections*, 580 F.3d 748 (8th Cir. 2009) ..................... 20

*Tatom v. Georgia–Pacific Corp.*, 228 F.3d 926 (8th Cir. 2000) ................................... 25

*Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ............................. 12, 13

*Torgerson v. Rochester*, 643 F.3d 1031 (8th Cir. en banc 2011) .................................. 12

*Trierweiler v. Wells Fargo Bank*, 639 F.3d 456 (8th Cir. 2011) .................................. 25

*Tuggle v. Mangan*, 348 F.3d 714 (8th Cir. 2003) ...................................................... 20

*USPS Bd. of Governors v. Aikens*, 460 U.S. 711 (1983) ............................................. 12

iv

*Wedow v. City of Kansas City, Missouri*, 442 F.3d 661 (8th Cir. 2006) ...................................... 14

*Wilber v. Brady*, 780 F. Supp. 837 (D.D.C. 1992)........................................................................ 20

*Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944 (8th Cir. 2011).......................... 24, 25

*Winspear v. Cmty. Dev., Inc.*, 574 F.3d 604 (8th Cir. 2009) .................................................... 24

*Wright v. Rolette Cty.*, 417 F.3d 879 (8th Cir. 2005).................................................................. 25

*Xuan Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952 (8th Cir. 2015)........................................... 15

*Zabkowicz v. West Bend Co.*, 589 F. Supp. 780 (E.D. Wis. 1984) .............................................. 19

**Statutes and Other Authorities**

29 C.F.R. § 1614.105(a)(1) ........................................................................................................... 13

42 U.S.C. §§ 2000e *et seq.*........................................................................................................... 12

42 U.S.C. § 2000e-2...................................................................................................................... 12

Fed. R. Civ. P. 56(a) ..................................................................................................................... 11

Fed. R. Civ. P. 56(c) ..................................................................................................................... 11

Fed. R. Civ. P. 56(e)(2)................................................................................................................. 11

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| MONICA WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00192-RK |
| | ) | |
| ROBERT WILKIE, SECRETARY, | ) | |
| DEPARTMENT OF VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### (Suggestions in Support Incorporated)

Defendant moves the Court to enter its Order granting Defendant summary judgment for the following reasons:

1.  Plaintiff failed to timely exhaust administrative remedies regarding claims of disparate treatment, racial harassment and retaliation.

2.  Plaintiff cannot establish a prima facie case of disparate treatment, race discrimination or retaliation because the alleged events do not constitute adverse employment actions.

3.  Summary judgment must be granted regarding Plaintiff's claim of discriminatory harassment based on her race because her supervisors' work related decisions and actions cannot be characterized as sufficiently severe and pervasive so as to cause a hostile work environment.

4.  Plaintiff cannot establish a prima facie case of constructive discharge.

5.  If the Court finds that Plaintiff has established a prima facie case regarding any claim, summary judgment is warranted because the decisions and actions of Plaintiff's supervisors were made for legitimate non-discriminatory reasons.

1

## SUGGESTIONS IN SUPPORT

### I.  Plaintiff's Administrative EEO Claims

In June 2016, after Watson resigned to take another position, she filed the following mixed case EEO Complaint:

Whether complainant was subjected to a hostile work environment based on race (African American) and sex (female)[1] as evidenced by the following events:

1. On September 5, 2014, January 23, 2015, and June 19, 2015, Laurie Schwab (supervisor) did not follow the required HR boarding process thereby failing to ensure the sustainability of complainant's position.

2. On October 19, 2015, Ms. Schwab threatened to disband complainant's work group.

3. On October 21, 2015, Ms. Schwab gave complainant a Fully Satisfactory performance rating. Complainant believes she should have received a higher rating.

4. On November 3, 2015, November 5, 2015, and January 7, 2016, Ms. Schwab sent outside job announcements to the complainant in an effort to induce her to take another job position outside the VA.

5. On March 6, 2016, Ms. Schwab spoke poorly about the complainant to senior leadership.

6. On March 18, 2016, Ms. Schwab gave complainant a written counseling.

7. On May 27, 2016, complainant was constructively discharged

Ex. 1, p 000025.

The Office of Resolution Management ("ORM") for the VA dismissed Event No. 3 because it was a discrete act which had never been presented to an EEO counselor and was obviously untimely.   Ex. 1, p. 000026.

Subsequently on September 2016 Plaintiff sought to amend her complaint to include the denial of a Special Advancement Award in 2015.   That discrete claim was also dismissed but included in the investigation of Plaintiff's harassment (hostile work environment) claim along with events 1 through 6.   Ex. 2, p. 000022.

---

[1]    Plaintiff does not raise sex or sexual harassment as bases for her claims in her civil action.

Event 7 (forced resignation) was deemed to be a timely raised discrete act and accepted for investigation as an independently actionable claim. The overall harassment claim was accepted for investigation. Ex. 1, p. 000026.

During the investigation, on November 30, 2016, Plaintiff sought to add reprisal for prior EEO activity as a basis for her complaint. She alleged that contact with the union on an unspecified date was the prior EEO activity. Ex. 3, p. 000042.

## II.  New Claims Alleged in Civil Action

In addition to the claims and allegations which the Plaintiff presented to the VA Watson alleges in Plaintiff's First Amended Complaint the following:

1.  That Laurie Schwab used racial epithets directed toward black females and black males. (First Amended Complaint ("Complaint") ¶¶ 16, 17).

2.  That Laurie Schwab hired only Caucasians to work for her and appeared to terminate black employees at a disproportionate rate. (Complaint ¶ 17).

3.  The Laurie Schwab scrutinized and scolded black employees and increased workloads of black employees. (Complaint ¶¶ 18-20).

4.  Plaintiff was never given training for additional duties required for her CDIS position. (Complaint ¶¶ 26, 27).

5.  Count I is a claim of disparate treatment alleging various adverse job actions which were not raised by Plaintiff during EEO counseling or the investigation as discrete events.

6.  Count III is a claim of retaliation which was never presented to an EEO Counselor. In that claim, Plaintiff alleges a failure to train the Plaintiff and a "lowered" performance appraisal due to EEO activity.

3

### III. Statement of Facts

**Background**

1.    Plaintiff Monica Watson is a black female employed by the Department of Veterans Affairs from September 2006 until her resignation in May 2016.

2.    In 2014 Plaintiff was a GS-0675-9 VA employee with the position title of Medical Records Technician.   Her place of employment was the Kansas City VA Medical Center ("VAMC").

3.    Plaintiff performed her duties by teleworking from home until June 17, 2014 when she was directed to report to the Kansas City VAMC for duty because her performance was unsatisfactory.   Exs. 4 and 5.

4.    The decision to suspend Plaintiff from the telework program was made by Coding Supervisor Denise Drummond.   Ex. 5.

5.    Laurie Schwab, the Chief of Health Information Management at the VAMC became Plaintiff's primary supervisor in the Summer of 2014 in the absence of a Coding Supervisor when Ms. Drummond vacated the position.   Ex. 6, Affidavit of Laurie Schwab dated October 25, 2016, pp. 4-8.

6.    Plaintiff's second level supervisor was Stanley Utley, the Chief Business Officer for the Kansas City VAMC.   Ex. 7, Affidavit of Stanley Utley dated October 24, 2016, p. 4.

**Event I - Boarding Issue**

7.    Effective June 28, 2015, Plaintiff's position title was officially changed to Medical Records Technician (Coder)-CDIS reflecting her assigned duties.

8.    The position title change occurred in connection with VHA position changes in 2014 to new "hybrid Title 38" position titles.   In 2014, the VA received new qualification standards for Title 38 positions, including Medical Records Technicians, Medical Reference

4

Technicians, Coders and the Clinical Document Improvement Coders. Additionally, under the new Title 38 qualification standards, a GS-9 Coder must be a CDI, a Coding Auditor or a Lead Coder. The position titles for some existing GS-9 coding staff were changed to the CDIS [CDI Specialists (CDIS)] title, and Plaintiff was one of the GS-9 coders changed to CDIS. Ex. 6, pp. 8-9; Ex. 8, VA Handbook 5005/79 Appendix 635, pp. 000517-000518.

9. On January 23, 2015, Ms. Schwab reviewed Functional Statements for Coders GS-0675-09 for the purpose of determining whether the Human Resources ("HR") Boarding process was necessary for those receiving a position title change. Ms. Schwab explained that during her review she discovered that the GS-9 coders were already designated to perform auditor duties and to train providers. Ex. 6, pp. 9-11; Ex. 11.

10. The position title change did not involve changes to pay and benefits and the CDI Specialist, GS-0675-09 employees, including Plaintiff, would continue performing "some" coding duties with the CDIS duties including auditing and training providers. Ex, 6, pp. 9-11.

11. Based on advice from the HR service, the VAMC did not need to have employees boarded for a position title change because that was the only thing changing. Ex, 6, pp. 10-11; Ex. 9, pp. 000373-000375.

12. On June 19, 2015, Ms. Schwab informed Watson that because she received boarding for promotion to the Coder, GS-0675-9 position prior to 2010, Plaintiff did not need boarding for the new position title change. Ex. 6, p. 11.

13. Plaintiff received the Notice of Personnel Action/Standard Form SF-50, dated June 28, 2015, reflecting her position title change from Coder, GS-0675-09, to Medical Records Technician CDI Specialist, GS-0675-09. Ex. 10.

14.     The June 28, 2015 SF-50 shows Watson received the official title change from Medical Records Technician to Medical Records Technician CDIS without changes to grade, pay, or other benefits.   Ex. 10; Ex. 11.

**Event 2 - October 19, 2015 Meeting**

15.     The statement made during the October 19, 2015 meeting, which Plaintiff perceived as a threat, was Stan Utley's statement to Ms. Schwab and the CDI staff that if they couldn't get their "stuff" together and "get it going" that senior management would have to suspend the program.   Since the service experienced a reduction in the coding staff by 50 percent, Plaintiff and the other two CDI staff members continued to perform coding duties.   The CDI staff exhibited "animosity" because they were not happy with the staffing situation and their continued coding work while also assigned to the CDI program.   Ex. 6, pp. 21-23; Ex. 7, p. 9.

16.     Following several meetings to address the CDI staff and productivity concerns, staffing issues and complaints from the Director, other Medical Center officials and Providers about a lack of CDI program information and training, Officials suspended the CDI program. Ex. 7, pp. 9, 12, 13.

17.     The suspension of the program had no impact on the Plaintiff's working conditions, pay, grade or benefits.   Ex. 7, p. 13.

**Event 3 - October 21, 2015 Performance Rating**

18.     On October 14, 2015, Plaintiff received an annual overall performance rating of Fully Successful on her annual performance appraisal rated by Laurie Schwab following a Fully Successful progress review on April 30, 2015.   Ex. 12.

19.     The appraisal noted in the narrative summary that "Ms. Watson has joined the CDIS team within this rating period.   Ms. Watson has very good skills for PowerPoint, Excel, and SharePoint.   Customer Service is excellent."   Ex. 12, p. 000451.

6

20.     Ms. Schwab testified that she rated the Plaintiff "Fully Successful" because Plaintiff merely met her performance standards.   Ms. Schwab explained that Plaintiff provided neither written nor verbal justification of any work exceeding the performance standards and justifying a higher rating.   Ex. 6, pp. 27-28.

**Event 4 – Job Announcements**

21.     Ms. Schwab forwarded numerous job announcements to staff member in the coding and auditing group which she received because of her HIMS chief position.   Ex. 6, p. 30.

22.     Ms. Schwab forwarded one announcement to Watson specifically because Watson had received her RHIA credential and the employer was looking for an RHIA.   The only other RHIA in Schwab's department had a supervisory position.   Ex. 6, pp. 30-31.

23.     Ms. Schwab and Mr. Utley knew that Ms. Watson was actively looking for a better job; she had requested letters of recommendation.   Ex. 7, pp. 14, 15.

24.     On December 10, 2015, Ms. Watson asked Stan Utley for a letter of recommendation because she was actively seeking another position.

25.     Mr. Utley provided the letter of recommendation on December 14, 2015.   Ex. 13.

**Event 5 – Criticism of Plaintiff to Management**

26.     Plaintiff's claim that her supervisor spoke poorly of her was based on something told to her without any details of the statement; she did not know when or where it was made. She testified she was not present.   Ex. 17, pp. 38, 39, 42.   Ms. Schwab had no recollection of any such meeting.   Ex. 6, p. 36.

**Event 6 – Counseling Memorandum**

27.     On March 18, 2016, Plaintiff received a written counseling memorandum.   The written counseling, dated March 16, 2016, shows Plaintiff received the letter for failure to follow instructions regarding deadlines for requested information, and noted Plaintiff's productivity at only 18 percent for the period of February 28, 2016 through March 4, 2016.   Ex. 15; Ex. 6, p. 37.

28.     Plaintiff's written counseling was not a disciplinary action, and her supervisor explained that it served only as an opportunity for improvement involving repeated failure to follow instructions.   Ex. 6, p. 37.

29.     Ms. Schwab testified that three CDIs were going to receive the same written counseling for missing deadlines; except, five minutes before the third deadline, one of the CDIs (race: Caucasian) turned in the work.   Ms. Schwab explained that this resulted in that CDI Specialist having only two missed deadlines compared to three missed deadlines by Plaintiff. Ms. Schwab explained further that she was advised by Human Resources, Labor Relations officials that she could not issue a written counseling unless there were three missed deadlines. Ex. 6, pp. 38, 39.

**Denial of Special Advancement Award**

30.     The Professional Standards Board (PSB) did not find Plaintiff eligible for the SAA because she did not show excellence in performance and there was no evidence of any "extra special" achievement.   Ex. 22; Ex. 6, p. 57.

31.     The record does not show that the PSB, responsible for the decision at issue here, received anything from Plaintiff about completing a special certification that qualified her for the SAA.   Additionally, Plaintiff provided no evidence establishing any racial bias by the PSB members who made the decision.   Ex. 6, pp. 58, 59.

8

**Resignation**

32.    On May 16, 2016, Plaintiff submitted a letter of resignation which stated:

Dear Ms. Schwab:

This is an official letter of resignation of my current position at the KCVA
Medical Center, I will be moving forward in my career path and have accepted a
professional position that will allow me to fully utilize my plethora of skills and
knowledge and is commensurate with my HIM Bachelor Degree and RHIA
credential.   My last day of employment at the Kansas City VA Medical Center
will be **May 27, 2016.**

Ex. 16, p. 000387.

33.    The email to which she attached her letter of resignation stated "Have a

Marvelous Monday !!!! ☺.   Ex. 16, pp. 000388-000389.

34.    Plaintiff did not indicate in any communication to supervisors or Human

Resources staff that her resignation was due to a racially hostile work environment while she was

employed by the VA.   Ex. 6, p. 52; Ex. 7, pp. 19-21; Ex. 16.

35.    Ms. Schwab stated that the reason the Plaintiff gave for her resignation was "she

got another job, a better job."   Ex. 6, p. 52.

**Training**

36.    Plaintiff testified that she was directed to online training courses by her supervisor

and provided other educational materials.   Ex. 14, p. 24.

37.    Plaintiff believed these resources to be mediocre.   Ex. 14, p. 24.

38.    Plaintiff's supervisor prepared and presented Plaintiff with guidelines and

presented weekly training meetings.   Ex. 6, pp. 19, 20, 23.

**Derogatory Language**

39.    There is no allegation in Plaintiff's sworn affidavit (Ex. 14) or in her rebuttal

affidavit (Ex. 17) that Ms. Watson was ever subjected to abusive language, racial slurs or

9

comments.   Plaintiff was afforded ample opportunity in the sworn interview (Ex. 14) and in her written testimony (Ex. 17) to present such evidence.

**EEO Counseling**

40.     On March 21, 2016, Plaintiff sought EEO counseling regarding the written counseling she had received on March 8, 2016.   Ex. 18, p. 000015.

41.     There is no record that Plaintiff sought EEO counseling for any other employment issue she may have had.

**EEO Processing**

42.     The VA and Plaintiff sought to mediate the dispute regarding written counseling without success.   Plaintiff was informed of her right to file a formal EEO Complaint on June 2, 2016.   Ex. 18, p. 000015.

43.     Plaintiff submitted a handwritten Complaint of Employment Discrimination regarding the written counseling on June 15, 2016.   Ex. 19.

44.     Plaintiff also filed a mixed case alleging that her resignation was forced and that she was constructively discharged because of her sex and race.   See Ex. 1.

45.     Following the investigation of Plaintiff's claims, ORM submitted the investigation file to the Office of Employment Discrimination Complaint Adjudication ("OEDCA") for a final agency decision regarding Plaintiff's mixed claim of constructive discharge.   Ex. 20, p. 1.

46.     OEDCA adjudicated the mixed claim raised in the complaint, and issued a final agency decision on February 21, 2017, finding no discrimination, and provided Plaintiff with notice of her right to appeal to the Merit System Protection Board ("MSPB") or file a civil action.   Ex. 20.

10

47.     On December 16, 2016, ORM issued Plaintiff notice of her right to request a

hearing before an EEOC Administrative Judge concerning her non-mixed claims, and Plaintiff

timely requested a hearing.   On January 22, 2018, Plaintiff withdrew her hearing request.

Accordingly, the EEOC Administrative Judge remanded the non-mixed claim to the VA for a

final agency decision.   OEDCA received the judge' order on January 23, 2018.   Ex. 21.

48.     OEDCA issued its Final Agency Decision finding no discrimination on April 3,

2018.  Ex. 21.

## IV.  Argument

### A.  Legal Standards

#### 1.     Standard for Summary Judgment.

Summary judgment is to be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The movant "bears the initial responsibility of informing the district court of the basis of

its motion," and must identify "those portions of [the record] . . . which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).   See Fed. R. Civ. P. 56(c). If the movant does so, the non-movant must respond by

submitting evidentiary materials that set out "specific facts showing that there is a genuine issue

for trial." *Id.* At 324, *quoting from former* Fed. R. Civ. P. 56(e)(2). "On a motion for summary

judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there

is a genuine dispute as to those facts.' "  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) *quoting*

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotations omitted).   The non-movant "must

do more than simply show that there is some metaphysical doubt as to the material facts," and

must come forward with "specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).   " 'Where the

11

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' "  *Ricci*, 557 U.S. at 586, *quoting Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

The Supreme Court has reiterated that a district court should not "treat discrimination differently from other ultimate questions of fact," *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993), *quoting USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).  "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. Rochester*, 643 F.3d 1031, 1044 (8th Cir. en banc 2011).

### 2. Burden of Proof Framework.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* prohibits discrimination against an employee based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  Under Title VII, in the absence of direct evidence of discrimination, the allocation of burdens and the order of presentation of proof is a three-step process.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973).  The plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If the plaintiff succeeds in proving a prima facie case, the burden shifts to the agency to "articulate some legitimate, nondiscriminatory reason for the [action]."  *McDonnell Douglas Corp.*, 411 U.S. at 802.  The plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination.  It is not enough to disbelieve the employer's articulated reason. Plaintiff must present evidence of intentional discrimination.  *See St. Mary's Honor Center*, 509

12

U.S. at 506–11.   Although the burden of production may shift, the burden of persuasion at all times remains on the plaintiff to prove his case by a preponderance of the evidence.   *Texas Dept. of Community Affairs*, 450 U.S. at 256; *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003).

**B.      Plaintiff failed to timely exhaust administrative remedies regarding claims of disparate treatment, racial harassment and retaliation.**

As a necessary condition precedent to pursuing an employment discrimination claim in federal court, an aggrieved plaintiff must initially exhaust administrative remedies with her employer.   *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003); *McAlister v. Sec'y of Dep't of Health & Human Servs.*, 900 F.2d 157, 158 (8th Cir. 1990) ("Administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer."   (citing   *Morgan v. U.S. Postal Serv.*, 798 F.2d 1162 (8th Cir. 1986)). Failure to exhaust such remedies is fatal to claims of federal employment discrimination.

For individuals employed by the federal government, the exhaustion of administrative remedies includes compliance with the requirements of 29 C.F.R. § 1614.105(a)(1).   By its terms, § 1614.105 requires an employee to initiate contact with an EEO counselor within 45 days of the date of any alleged discriminatory act or personnel action.   *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Bailey v. U.S. Postal Serv.*, 208 F.3d 652, 654 (8th Cir. 2000).   Such contact begins the so called "informal" administrative stage.   If informal counseling does not resolve the dispute, then an aggrieved employee may file a written complaint of discrimination, thus, initiating the "formal" administrative stage.   The informal stage does not require an employee to prepare or file any written documentation, but may be initiated by merely contacting an EEO counselor on the telephone.

Plaintiff first consulted with an EEO counselor on March 21, 2016, because she had received a counseling memorandum from her supervisor on March 18, 2016 for repeatedly

failing to follow the directions of her supervisor. That was the only issue raised with the EEO Counselor by the Plaintiff. Exs. 18 and 19. Therefore, any allegation of disparate treatment based on her race or EEO activity regarding an incident or alleged adverse action which is not reasonably related to the claim regarding written counseling or which occurred over 45 days prior to March 21, 2016 is barred for failure to timely exhaust administrative remedies.

At the administrative stage, the only discrete claims initially accepted for investigation were the written counseling claim and the allegation of constructive discharge. All other alleged discrete actions were only investigated in connection with Plaintiff's claims of racial and sexual harassment constituting a hostile work environment. *See* Exs. 1 and 2.

Plaintiff sought to add the discrete claim of retaliation on November 30, 2016 during the investigation. Plaintiff cannot present a claim of retaliation for the first time many months after the alleged event and argue that it is reasonably related to a claim of race discrimination. The Eighth Circuit Court of Appeals has long held that these are not reasonably related inquiries. *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 672-73 (8th Cir. 2006) ("retaliation claims are not reasonable related to underlying discrimination claims" quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)). *See also Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851–52 (8th Cir. 2012). Plaintiff did not exhaust administrative remedies regarding her claim of reprisal.

Further, Plaintiff never sought EEO counseling regarding her claim of a hostile work environment based on her race. She made no such claim until she filed her formal complaint in June 2016 after resigning from the VA to take another job. Thus, Plaintiff has only timely exhausted two claims: (1) her complaint regarding the March 18, 2016 memorandum and the claim of constructive discharge after she resigned.

14

The constructive discharge claim was a mixed claim that Plaintiff could raise before the Merit System Protection Board (MSPB) without EEO counseling. Obviously, the constructive discharge claim is based on Plaintiff's allegation of a hostile work environment. However a timely claim of constructive discharge does not entitle a plaintiff to ignore the requirement that she timely present any separate harassment claim to an EEO counselor. Plaintiff did not do so.

This Court can only consider Plaintiff's claim regarding the counseling memorandum and the claim of constructive discharge which are the only claims properly exhausted.

Every discrete claim including every claim of disparate treatment and retaliation is time barred because Plaintiff failed to present such claims to an EEO counselor within 45 days of the alleged action.

**C.** **Plaintiff cannot establish a prima facie case of disparate treatment, race discrimination or retaliation because the alleged events did not constitute adverse employment actions.**

In order to establish a prima facie case of race discrimination Watson must show "(1) [s]he was a member of a protected group; (2) [s]he was qualified to perform the job; (3) [s]he suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." *Xuan Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 958 (8th Cir. 2015). Any claim of retaliation requires proof of a material adverse employment action. *AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir. 2014).

Plaintiff cannot establish a prima facie case of race discrimination, or disparate treatment because there is no evidence she suffered an adverse employment action. *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 693 (8th Cir. 2001). The Eighth Circuit has stated that "[n]ot everything that makes an employee unhappy is an actionable adverse employment action . . . . Rather, an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits or responsibilities." *Id.* at 691. " 'Mere inconvenience without

15

any decrease in title, salary, or benefits is insufficient to show an adverse employment action.' " *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005) (quoting *Cruzan v. Special Sch. Dist, No. 1*, 294 F.3d 981, 984 (8th Cir. 2002)).   Minor changes in working conditions that inconvenience an employee or alter the employee's work responsibilities do not rise to the level of an adverse employment action.   *Sallis*, 408 F.3d at 476.   Applying this high standard, the Eighth Circuit has concluded that "[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law."   *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003).

In this case, we have a Plaintiff who was not suspended or terminated.   No discipline was ever proposed against her.   Her yearly evaluation for 2016 was positive.   She was fully successful.

The Eighth Circuit discussed employment actions in *Box v. Principi*, 442 F.3d 692 (8th Cir. 2006).   In *Box*, the plaintiff, a contract specialist for the Department of Veterans Affairs, claimed she was discriminated against by not receiving training on or being assigned to more complex contracts, which would allow her to advance her career.   *Id.* at 694–95.   *Id.*   The Eighth Circuit upheld the district court's grant of summary judgment to the defendant, finding that the plaintiff failed to demonstrate that she had suffered an adverse employment action. *Baucom v. Holiday Companies*, 428 F.3d 764, 767 (8th Cir. 2005).

The Boarding issue and Plaintiff's objection to being Grandfathered into her new title is puzzling because Plaintiff is now alleging that she was not properly or adequately trained for her responsibilities.   If you truly think you have inadequacies and require extensive training why would you demand to immediately appear before a Board which will test and possibly challenge your knowledge and skills and jeopardize your career and change of title?

16

VA management's decision that Plaintiff was entitled to the new title because she was already a GS-9 and had commensurate duties and responsibilities under the previous generic title did not adversely effect her employment situation. She remained at all times a GS-9 with the same salary and benefits.

Plaintiff's new complaint about training is actually about the quality of training offered. Watson claims the online training was mediocre. She does not say why. She was also provided written materials to study and use for reference and guidance. Facts, ¶¶ 36, 38. In any event, it is well established that denial of a demand for training is not an adverse employment action. *See AuBuchon*, 743 F.3d at 644 (summarizing Eighth Circuit decisions regarding what is not a material adverse action as a matter of law).

Forwarding an employee, in fact every subordinate employee, information regarding relevant job opportunities, inside and outside the VA is not an adverse employment action. It does not alter title, salary or benefits. *Id.*

The counseling memorandum received by Plaintiff cannot be characterized as an adverse employment action. *See Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) ("formal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII"). *See also Baucom*, 428 F.3d at 768. The memo Watson received was not even a formal reprimand. It was written counseling that did not go into her Official Personnel File. Facts, ¶ 28.

Plaintiff's fully successful rating in her Performance Appraisal was not an adverse action. It is well established with regard to performance evaluation and reviews, "[a] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment," but it is actionable if the "employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's

17

employment." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 633 (8th Cir. 2016) quoting In *Spears v. Missouri Dep't of Corrections and Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000).

Here, one cannot even characterize the performance evaluation as poor. Plaintiff had received more serious criticism from her prior supervisor in 2014. Facts, ¶¶ 3, 4. She was fully successful in 2015 which was an improvement over the previous year. Ex. 12.

**D.** **Summary judgment must be granted regarding Plaintiff's claim of discriminatory harassment based on her race because her supervisors' work related decisions and actions cannot be characterized as sufficiently severe and pervasive so as to cause a hostile work environment.**

In June, 2016, after her departure, Plaintiff contended that she was subjected to harassment by the VA which created a hostile work environment. She listed the six events which she believed to be harassing behavior. Plaintiff has never testified that she was subjected to racially abusive language by her supervisors. When testifying under oath as to the nature of the harassment and why she felt forced to resign she simply reiterated and explained her feelings about the six events set forth in her Complaint as described in the acceptance letter. Exs. 1, 14, 17.

The Supreme Court in *Harris v. Forklift Systems*, 510 U.S. 17 (1993) defined the applicable burden a plaintiff must meet to establish a hostile work environment claim under Title VII. *Harris* found that Title VII is violated when the work place is permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Conduct which is merely offensive is not sufficient. *Id.*

To establish a prima facie case of racial harassment and/or hostile work environment Watson must show:

18

> '(1) that [she] is a member of a protected group; (2) that [she] was
> subjected to unwelcome harassment; (3) that the harassment was
> based on [race]; and (4) that the harassment affected a term,
> condition or privilege of employment.'

*Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (quoting

*Henthorn v. Capital Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)).

The conduct in question should be evaluated from the standpoint of a reasonable person,

taking into account the particular context in which it occurred. *Highlander v. K.F.C. National*

*Management Co*., 805 F.2d 644 (6th Cir. 1986). Conduct that is not severe or pervasive enough

to create an objectively hostile or abusive environment -- an environment that a reasonable

person would find hostile or abusive -- is beyond Title VII's purview. *Harris*, 510 U.S. at 21.

Title VII does not serve "as a vehicle for vindicating the petty slights suffered by the

hypersensitive." *Zabkowicz v. West Bend Co.*, 589 F. Supp. 780, 784 (E.D. Wis. 1984).

Defendant contends that Watson cannot meet her burden to show the second, third or

fourth elements of the prima facie case. Applying *Harris* and the other applicable case law, it is

clear that as a matter of law Watson was not harassed based on her race. First, even if viewed in

a light most favorable to Plaintiff, most of the incidents complained of do not meet the definition

of what constitutes "harassment." *Harris* defines harassing conduct as discriminatory

intimidation, ridicule, and insult that results in an abusive and hostile environment. This means

that the conduct must be objectively discriminatory on its face and not merely actions taken as a

result of discriminatory animus.

Watson's alleged incidents do not constitute harassment as that term is defined by the

case law because they do not constitute verbal or physical conduct that denigrates or shows

hostility or aversion towards plaintiff based on her race. Instead the incidents were for the most

part common workplace decision regarding evaluations, training and following a supervisor's

directions. Every relevant factor indicates that plaintiff's allegations could not as a matter of law constitute harassment under Title VII. *See*, *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076 (8th Cir. 2010).

For example, as the Plaintiff's immediate supervisor, Ms. Schwab was imbued with the authority to assign, review and criticize Plaintiff's work. The EEO laws are not designed to insulate employees from adverse actions which would be taken against any employee regardless of status. *Wilber v. Brady*, 780 F. Supp. 837, 840 (D.D.C. 1992).

In order to meet her burden on the fourth element of the prima facie case, Watson " 'must demonstrate the unwelcome harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment by creating an objectively hostile or abusive environment.' " *LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098, 1101 (8th Cir. 2005) (quoting *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003)). " 'to be actionable, conduct must be extreme and not merely rude or unpleasant.' " *Id.* (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)).

A plaintiff must show that " 'the workplace is permeated with discriminatory intimidation, ridicule, and insult.' " *Sutherland v. Missouri Department of Corrections*, 580 F.3d 748, 751 (8th Cir. 2009) (quoting *Harris*, 510 U.S. at 21); *see also Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 846 (8th Cir. 2006) ("Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.' ") (quotations omitted). Thus, the Plaintiff "must clear a high threshold to demonstrate actionable harm, for 'complaints attacking the ordinary tribulation of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' obtain no remedy." *Id.* at 845-46 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

20

Factors to consider in making such a determination include: (1) The frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating; and (4) whether the conduct was so severe or pervasive that it unreasonably interfered with the employee's work performance. *Anderson*, 579 F.3d at 862 (citation omitted). " 'Title VII does not prohibit all verbal or physical harassment in the workplace and is not a general civility code for the American workplace.' " *Id.* at 862–63 (quoting *Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008)).

"Harassment standards are demanding." *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006). "Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to support a claim of hostile work environment." *Id.* (internal quotations and citations omitted).

Here, there is no evidence of any racist comments directed toward Watson or spoken in her presence, let alone severe and pervasive harassment. As one court noted, "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity,' meaning that '[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.' " *Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997) [citing *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986) and *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)].

In *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886 (8th Cir. 2005) the Eighth Circuit had before it a factual scenario in which an African-American male was subjected to hearing employees refer generally to African-Americans as "niggers"; an employee and a supervisor refer to him specifically as a "nigger" and a "nappy headed little nigger"; the staff posting a picture of Aunt Jemima in the workplace during Black History Month; and an incident of vandalism done to the plaintiff's vehicle while it was parked at the workplace, which the plaintiff

21

believed to be racially motivated.  *Id.* at 888–890.  The *Singletary* Court, in affirming the district court's grant of summary judgment, noted that the use of racial slurs in the workplace, without more, "do not render a work environment hostile as a matter of law."  *Id.* at 893.  The Court elaborated as follows:

> Racial epithets are morally repulsive. But our cases require that a plaintiff show more than a few occurrences over a course of years. To be actionable, such conduct must be shown to occur with such frequency that the very conditions of employment are altered and be viewed by a reasonable person as hostile.

*Id.*

The high barrier which must be overcome to show a racially hostile work environment is also demonstrated by *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759–60 (8th Cir. 2004), a case in which the Court affirmed summary judgment in the employer's favor, despite the fact that Mr. Bainbridge overheard multiple offensive racial epithets uttered by the owners of the business over the course of two years—including the words "Jap," "nip," and "gook" approximately once a month (though the plaintiff had informed the owners that his wife was Japanese, and he found those terms offensive), and "spic," "wetback," "monkey," and "nigger" at other times, with respect to other racial minorities.  *Bainbridge*, 378 F.3d at 758.  *See also Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003) (affirming district court's judgment as a matter of law in favor of employer, after a jury trial, on the issue of hostile work environment, when the plaintiff was called "boy" and "black boy" on a few occasions over a period of years, and his supervisor once referred to Africans as having big penises, and noting that, "[w]hile offensive, the statements do not constitute a "steady barrage of opprobrious racial comment" sufficient to support a . . . hostile work claim").

Decisions regarding the assignment of work, the evaluation of work performed, what training an employee should receive or the use of a counseling memorandum to address

Plaintiff's refusal to follow the directive of her supervisor are not "acts of harassment." Although Plaintiff may disagree with such workplace decisions and her supervisor's bedside manner, this is not extreme conduct constituting a change in the term and conditions of employment. Instead, the supervisors' decisions, and comments "viewed collectively or individually . . . are merely instances of a subordinate employee being subjected to the criticism and control of a supervisor." *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1048 (8th Cir. 2003).

While the plaintiff may have faced "a frustrating work situation," it was not "so severe or pervasive as to have affected a term, condition, or privilege of her employment." *See Bradley v. Widnall*, 232 F.3d 626, 631-32 (8th Cir. 2000). Conduct must be extreme to amount to a change in the terms and conditions of employment. *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). Seen objectively, the situation Plaintiff describes represents little more than "the ordinary tribulations of the workplace." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999) (citations and quotations omitted); *see Al-Zubaidy*, 406 F.3d at 1039. Perhaps Ms. Schwab was irritating, unpleasant, or rude, but that does not violate federal law. And it falls well short of the "demanding" standards that are intended to ensure that "Title VII does not become a general civility code" for the American workplace. *See, Al-Zubaidy*, 406 F.3d at 1038–39; *Scusa*, 181 F.3d at 966–67; *see also Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013).

**E.**     **Plaintiff cannot establish a prima facie case of constructive discharge.**

"To prove a constructive discharge, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit." *Blake v. MJ Optical Inc.*, 870 F.3d 820, 826 (8th Cir. 2017) (citations omitted).   The standard for proving constructive discharge is higher than the standard for proving a hostile work environment.   *Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir.1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."), *aff'd,* 511 U.S. 244, 114 S. Ct. 1483 (1994).

Constructive discharge under Title VII can be a "compound claim" that joins with either harassment or hostile work environment.   *Pa. State Police v. Suders*, 542 U.S. 129, 143 (2004). But, "[h]ostile work environment and constructive discharge claims may be wholly distinct causes of action under Title VII," because although "a hostile work environment can form the basis for a constructive discharge allegation, hostile work environment discrimination can exist absent a tangible employment action."   *Winspear v. Cmty. Dev., Inc.*, 574 F.3d 604, 607 (8th Cir. 2009) (internal quotation and citations omitted); *see also Pa. State Police*, 542 U.S. at 147 ("A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."); *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 954 (8th Cir. 2011) (finding that because a plaintiff's hostile work environment claim failed, and the plaintiff's constructive discharge claim was presented on the same evidence, it too failed); *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008) (same).

"To establish a case of constructive discharge, [Watson] must show that (1) a reasonable person in [her] situation would find [her] working conditions intolerable, and (2) the employer

intended to force [her] to quit." *Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181, 186 (8th Cir. 2014) (quoting *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1132 (8th Cir. 2014)) (internal quotations removed). The first element is measured by an objective standard, not the subjective feelings of a plaintiff. *Tatom v. Georgia–Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). Evidence of the employer's intent may be proven "through direct evidence or through evidence that 'the employer . . . could have reasonably foreseen that the employee would quit as a result of its actions.' " *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1083 (8th Cir. 2010) (quoting *Wright v. Rolette Cty.*, 417 F.3d 879, 886 (8th Cir. 2005)).

Watson cannot establish either element. Her constructive discharge claim is premised on the same allegations that are insufficient as a matter of law to establish her hostile work environment claim. As such, her claim fails on the first element. *See Wilkie*, 638 F.3d at 954; *O'Brien*, 532 F.3d at 811. *See also, Howard v. Burns Bros.*, 149 F.3d 835, 841–42 (8th Cir. 1998) (discussing cases defining the types of conditions that render a workplace intolerable for constructive discharge claims). A single counseling memo, a fully successful performance appraisal and the other minor perceived slights, disagreements, and criticism to which Plaintiff took offense do not even approach the foothills of the standard to be met. Moreover, there is no evidence in the record from which a jury could find that Plaintiff's supervisor knew Watson's working conditions were so intolerable Plaintiff would have to quit.

Further, the Eighth Circuit "has consistently recognized that an employee is not constructively discharged if she 'quits without giving [her] employer a *reasonable* chance to work out a problem.' " *Id.*, citing *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 460 (8th Cir. 2011) (alteration in original, emphasis added) (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007)). "Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Smith v.*

*Goodyear Tire & Rubber Co.*, 895 F.2d 467, 473 (8th Cir. 1990), citing *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) (emphasis in original). "Failure to seek a resolution before quitting . . . is fatal to [a] constructive discharge claim." *MJ Optical*, 870 F.3d at 826 (citations omitted).

Plaintiff's only request for EEO counseling sought relief from a counseling memorandum issued because Plaintiff failed to follow her supervisor's directions. Plaintiff resigned to take another job and never sought EEO counseling to complain about harassment based on her race. Summary judgment is warranted regarding Plaintiff's claim of constructive discharge.

**F.**     **If the Court finds that Plaintiff has established a prima facie case regarding any claim, summary judgment is warranted because the decisions and actions of Plaintiff's supervisors were made for legitimate non-discriminatory reasons.**

As discussed in As discussed above, under the *McDonnell Douglas* framework, Watson first was required to establish a *prima facie* case of illegal retaliation. *Fercello*, 612 F.3d at 1078. If (and only if) Watson satisfied this initial burden, a rebuttable presumption of illegal discrimination would have arisen, and the burden thereafter would have shifted to the VA to rebut the presumption by articulating legitimate, nondiscriminatory reasons for the agency's decisions and actions. *Id.* Once such a reason was articulated, however, the presumption of illegal discrimination would have disappeared entirely with Watson then squarely bearing the burden of proving:

> By a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [discrimination or retaliation]. That is, the plaintiff may attempt to establish that he was the victim of intentional [discrimination or retaliation] by showing that the employer's proffered explanation is unworthy of credence.

*Reeves*, 120 S. Ct. at 2106 (*citations omitted*). The ultimate question, then, would have been "whether a 'prohibited reason, rather than the proffered reason, actually motivated the

26

employer's action.' " *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (*quoting, in part, Fercello*, 612 F.3d at 1077).

The 2015 performance evaluation was fully warranted by Plaintiff's performance. Ms. Schwab articulated the reasons for the rating of each aspect and the overall rating of fully successful.   Facts ¶¶ 19 and 20.

The counseling memorandum of March 18, 2016 explained in detail the reason it was being issued and the actions plaintiff needed to take to address aspects of her performance which did not meet expectations.   Facts, ¶¶ 27, 28; Ex. 15.

The VA fully explained the reasons why Plaintiff was entitled to her new slightly adjusted title without requiring her to go through the boarding process.   Facts, ¶¶ 7-14.

Having articulated legitimate non-retaliatory reasons for defendant's decisions and action, plaintiff "must present sufficient evidence to show both that the employer's articulated reason for the adverse employment action was false and that [retaliation] was the real reason[.]" *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010).   Plaintiff cannot meet her burden to prove pretext.

## V.  Conclusion

For the reasons set forth above, Defendant respectfully requests that the Court enter

summary judgment in favor of Defendant and against Plaintiff.

Respectfully submitted,

Timothy A. Garrison
United States Attorney


By:      */s/   Jerry L. Short*
Jerry L. Short, MO #26318
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3130
Facsimile: (816) 426-3165
Email: jerry.short@usdoj.gov
ATTORNEY FOR DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2019, a true and correct copy of the foregoing document

was filed with the Court using the Court's CM/ECF system and was served upon each attorney

of record via ECF notification.


*/s/   Jerry L. Short*
Jerry L. Short,
Assistant United States Attorney