IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MONICA WATSON, )
)
        Plaintiff, )
)
v. ) Case No. 4:17-00192-CV-RK
)
ROBERT WILKIE, SECRETARY, )
DEPARTMENT OF VETERAN )
AFFAIRS[1]; )
)
        Defendant. )

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Robert Wilkie, Secretary, Department of Veterans Affairs ("Defendant")'s Motion for Summary Judgment ("the Motion"). (Doc. 49.) The Motion is fully briefed. (Docs. 51, 55.) After careful consideration and for the reasons below, the Motion is **GRANTED.**

## Background

Plaintiff Monica Watson ("Plaintiff") brings the following allegations in her Complaint. (Doc. 35.) Plaintiff is an African American female that was employed with the Department of Veterans Affairs from September 2006 until her resignation in May 2016. In 2014, Plaintiff was a GS-0675-9 level employee with the position title of Medical Records Technician. She was employed at the Kansas City VA Medical Center.

Plaintiff alleges claims against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 20003 et seq. Plaintiff alleges she was racially discriminated against by her supervisor Laurie Schwab ("Schwab"), and this discrimination resulted in Plaintiff's constructive discharge. Plaintiff alleges the following causes of action: Count I: Race Discrimination; Count II: Hostile Work Environment; Count III: Retaliation; and Count IV: Constructive Discharge. Plaintiff seeks the following relief: monetary damages including lost wages, lost earning capacity,

---

[1] When this case was filed, David Shulkin was the Secretary of Veteran Affairs, and the caption so reflected. On July 30, 2018, Robert Wilkie was sworn in as the new Secretary of Veteran Affairs. Accordingly, the caption has been modified from its original version to reflect this transition. U.S. Department of Veterans Affairs, *Office of Public and Intergovernmental Affairs*, https://www.va.gov/opa/bios/secva.asp (last visited July 12, 2019).

emotional distress, back pay, compensatory damages, and special damages; equitable or injunctive relief; punitive and/or statutory damages; attorney's fees; and costs. Plaintiff alleges the following events in support of all claims.

- Boarding Issue[2]

The parties agree that Plaintiff's position title was officially changed on June 28, 2015, to Medical Records Technician (Coder) – CDIS. The parties agree the title change was in accordance with new "hybrid Title 38" position titles. The parties agree that Plaintiff's salary did not change with the position change.

Plaintiff argues that the failure to provide Plaintiff the opportunity to board into her new position prevented her from being able to meet the qualifications at the new position. Plaintiff testified that she and other African American employees were only allowed to engage in coding work. (Doc. 51-7, Plaintiff's Affid.) Plaintiff testified that as a result of the failure to board, Plaintiff and her similarly situated colleagues were subjected to increased workloads and passed over for advancement opportunities. (Doc. 51-7, Plaintiff's Affid.)

Schwab testified that Plaintiff did not require boarding because Plaintiff received boarding for a promotion to the Coder, GS-0675-9 position prior to 2010; therefore, she did not require additional boarding for the new position. (Doc. 49-6, Schwab Affid.) Utley testified that the increase in Plaintiff's workload was the result of a staffing shortage, not the result of race discrimination. (Doc. 49-7, Utley Affid.)

- October 19, 2015 Meeting

The parties agree that on October 19, 2015, Plaintiff's supervisor, Stan Utley, stated that if the staff in Plaintiff's department did not improve productivity, the senior management would suspend the program group Plaintiff was assigned. The parties agree the program was eventually disbanded. The parties agree the shutdown did not affect Plaintiff's salary, grade, or job benefits.

- October 21, 2015 Performance Rating

The parties agree that Plaintiff received an annual performance rating of "Fully Successful" on her annual performance appraisal completed by Schwab. Plaintiff testified that she was unable to surpass the performance standards because her work load was too high and did not receive proper boarding for the work. (Doc. 51-7, Plaintiff's Affid.) Plaintiff also testified that Schwab

---

[2] Plaintiff describes the "boarding" process in her deposition as the steps, such as trainings, that an employee must take to be considered for a new position within the company. (Doc. 49-14.)

2

manipulated the policies and procedures to deny Plaintiff access to career advancement. Schwab testified that Plaintiff received the rating of "Fully Successful" because Plaintiff merely met her performance standards. (Doc. 49-6, Schwab Affid.) Utley testified that the increased workload was not the result of discrimination, and instead, was the result of a staffing shortage. (Doc. 49-7, Utley Affid.) Schwab also testified that Plaintiff did not require boarding. (Doc. 49-6, Schwab Affid.)

- <u>Job Announcements</u>

The parties agree that Schwab forwarded job announcements to Plaintiff and other employees. Plaintiff testified that these job announcements were directed only to her, and the announcements were nonverbal gestures that Schwab was encouraging Plaintiff to find a new job. (Doc. 51-7, Plaintiff's Affid.) Schwab testified that job announcements were sent to multiple coding employees. (Doc. 49-6, Schwab Affid.) Utley testified that the letters were sent because Plaintiff said she was actively seeking a different job. (Docs. 49-7, Utley Affid.)

- <u>Criticism of Plaintiff to Management</u>

Plaintiff argues that Schwab spoke poorly of her to several senior level managers and a union representative. (Doc. 51-7, Plaintiff's Affid.) Specifically, Plaintiff alleges Schwab stated that Plaintiff would not be good at presenting to physicians. (*Id.*) Plaintiff argues that these statements were in retaliation for the EEO Complaint because Schwab had rated Plaintiff's presentation skills highly before the EEO Complaint was filed.

Defendant argues that the alleged statements could not have been made in retaliation because Plaintiff alleges the discussion occurred in February 2016, but Plaintiff did not seek EEO counseling until March 2016 and filed the EEO Complaint in June 2016.

- <u>Counseling Memorandum</u>

The parties agree that Plaintiff received a written counseling memorandum from Schwab on March 18, 2016. The parties also agree the written counseling states that Plaintiff failed to follow instructions regarding deadlines and states that Plaintiff's productivity is at eighteen percent for the period of February 28, 2016, through March 4, 2016.

Plaintiff testified that her productivity was low during that period because she was out on sick leave during that time. (Doc. 51-7, Plaintiff's Depo.) Plaintiff also testified that she and another African American colleague were given written counseling memorandums, but a white coworker who also missed deadlines was not. (Doc. 51-8, McKenzie Memo. to Inkley.) Plaintiff

testified that the receipt of a written counseling memorandum puts Plaintiff in a position vulnerable to termination. (Doc. 51-7, Plaintiff's Affid.)

Defendant states that Plaintiff's written counseling was not a disciplinary action, and instead, Schwab explained that it served only as an opportunity for improvement regarding repeated failure to follow instructions. (Doc. 49-6, Schwab Affid.) Defendant also states Schwab did not give a written counseling to a white coworker who was going to receive the same written counseling because the white coworker turned in the assignment five minutes before the deadline, where Plaintiff's assignment was late. (*Id.*)

- Denial of Special Advancement Award

The parties agree that Plaintiff did not receive a special advancement award. Plaintiff argues that she qualified for the Special Advancement Award but was denied the award solely as a result of Schwab's performance review of Plaintiff. Defendant states that Plaintiff was denied the award because she did not show excellence in performance and there was no evidence of any "extra special" achievement. (Doc. 49-22.)

- Resignation

The parties agree that Plaintiff submitted her letter of resignation on May 16, 2016. The parties agree that Plaintiff's letter of resignation stated,

> This is an official letter of resignation of my current position at the KCVA Medical Center, I will be moving forward in my career path and have accepted a professional position that will allow me to fully utilize my plethora of skills and knowledge and is commensurate with my HIM Bachelor and RIHA credential. My last day of employment with the Kansas City VA Medical Center will be May 27, 2016.

(Doc. 51-4, pgs. 16-17.)

Defendant states that Plaintiff did not indicate in any communication to her supervisors, human resources staff, or in her letter of resignation that her resignation was due to a racially hostile work environment. Schwab testified that the reason Plaintiff left her position was that "she got another job, a better job." (Doc. 49-6, Schwab Affid.) Plaintiff testified that she did not express her concerns regarding discrimination in her resignation letter or with staff because she believed it would be futile. (Doc. 51-7, Plaintiff's Affid.)

- Training

Plaintiff argues the training she was directed to complete was mediocre; therefore, she was denied appropriate training. Plaintiff also alleges the training sessions presided over by Schwab discouraged questions and humiliated employees. Defendant states that Plaintiff was provided

with proper training materials and the opportunity to attend satisfactory weekly training meetings. (Doc. 51-9.)

- Derogatory Language

Plaintiff alleges that she was subjected to racial slurs and racially derogatory language by Schwab and others.

**Legal Standard**

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "[A] dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In considering a motion for summary judgment, the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008) (citation omitted).

"Claims of discrimination under Title VII . . . are analyzed under the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)." *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999). First, the plaintiff must establish a prima facie case of discrimination. *Id.* If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employee's termination. *Id.* (quoting *McDonell Douglas*, 411 U.S. at 802). If the employer satisfies its burden, the employee must show the reason the employer asserts is pretextual. *Id.* "At all times, the burden of persuasion remains on the employee." *Id.*

**Discussion**

Defendant argues summary judgment is warranted as Plaintiff has not established a prima facie case for the following reasons: Plaintiff did not exhaust her administrative remedies before filing suit; Plaintiff did not experience an adverse employment action; Plaintiff was not constructively discharged; and even if Plaintiff establishes a prima facie case for all claims, Plaintiff's claims do not survive summary judgment because all decisions made by Defendant were made for legitimate, nondiscriminatory reasons.

5

### A. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff has not exhausted her administrative remedies for Plaintiff's hostile work environment and retaliation claims. Plaintiff argues her hostile work environment and retaliation claims are sufficiently related to her discrimination claim in the EEOC Complaint that they can be considered exhausted.

Title VII procedure requires a complaining employee to comply with administrative procedures before filing suit. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). "To properly exhaust, a complainant must initiate the EEO pre-compliant process 'within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.'" *Patrick v. Henderson*, 255 F.3d 914, 915 (8th Cir. 2001) (quoting 29 C.F.R. § 1614.105(a)(1)). "If the matter is not informally resolved, the EEO counselor notifies the complainant of her right to file a formal administrative complaint." *Id.* See § 1614.105(d). "Only the claims raised in this pre-complaint counseling (or issues or claims like or related to issues or claims raised in the pre-complaint counseling) may be alleged in the subsequent complaint filed with the agency." *Id.* See § 1614.105(b)(1). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party with proper notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Watson v. O'Neill*, 365 F.3d 609, 614 (8th Cir. 2004). EEOC regulations require an agency to dismiss a complaint if it is filed after applicable deadlines. 29 C.F.R. § 1614.107.

#### 1. Count II: Hostile Work Environment

Plaintiff first consulted with an EEO counselor on March 21, 2016, because she had received a counseling memorandum from Schwab on March 18, 2016. Defendant argues the only discrete claims accepted at the administrative stage were claims for constructive discharge and the written counseling memorandum. Therefore, Defendant argues that Plaintiff's claim for hostile work environment has not been exhausted because it was not raised until Plaintiff filed her formal EEO Complaint in June 2016. Plaintiff argues the EEO Complaint sufficiently raises a hostile work environment claim.

The Court finds that Plaintiff has failed to exhaust her administrative remedies concerning her claim for hostile work environment. Here, Plaintiff did not allege that she was subject to a hostile work environment in the EEO counseling session, and her hostile work environment claim

6

is not related to Plaintiff's grievance with the written counseling memorandum and her claim of race discrimination. *See* 29 U.S.C. § 1614.07(a)(2) ("a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor" shall result in dismissal of the entire complaint). *See also Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) ("A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC."). The EEOC counseling session only discussed the written counseling Plaintiff received on March 18, 2016. There were no references to a hostile work environment. *See* (Doc. 49-18.) Plaintiff was notified by the EEO counselor in the EEO counseling session that if a new claim was brought at a later time that was not discussed in the session, the new claim would be dismissed, unless it was related to a claim that was discussed in the session.[3] Therefore, Defendant has established that it is entitled to summary judgment for the hostile work environment claim pursuant to the EEO's exhaustion requirement.

### 2. Count III: Retaliation

Plaintiff argues that her retaliation claim is substantially similar to her race discrimination claim alleged in her EEO Complaint; therefore, Plaintiff has exhausted her administrative remedies for her retaliation claim. However, Plaintiff did not raise her retaliation claim in the EEO counseling session. Plaintiff sought to add this claim on November 30, 2016, over forty-five (45) days after the initial counseling session on March 21, 2016. Therefore, this claim has not been exhausted pursuant to 29 C.F.R. § 1614.105(a)(1).

Further, Plaintiff cannot claim her retaliation claim is reasonably related to the constructive discharge or discrimination claim that were properly exhausted to bypass 29 C.F.R. § 1614.105(a)(1)'s forty-five (45) day limit. *See Williams*, 21 F.3d at 222. The Eighth Circuit has "considerably narrowed our view of what is like or reasonably related to the originally filed EEOC allegations . . . [and] we have subsequently recognized that 'retaliation claims are not reasonably related to underlying discrimination suits.'" *Wedow v. City of Kan. City*, 442 F.3d 661, 672-73

---

[3] The language in the EEO counseling report is as follows. "The Aggrieved was informed that the claim listed above was the only claim addressed during the informal EEO counseling. If a formal Complaint of Discrimination is filed, a claim that has not been brought to the attention of an EEO Counselor and is not like or related to a claim that has been brought to the attention of an EEO Counselor is subject to dismissal in accordance with CFR 1614.107(a)(2)." (Doc. 49-18, at 2-3.)

(8th Cir. 2006) (internal quotation and internal citation omitted). *See also Richter v. Adv. Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012) (a retaliation claim is not reasonably related to an underlying discrimination claim; therefore, a retaliation claim must independently exhaust its administrative remedies). Here, Plaintiff did not raise her retaliation claim within forty-five (45) days of the initial counseling session, and Plaintiff's EEO Complaint concerning discrimination is not reasonably related to Plaintiff's retaliation claim sufficient to bypass § 1614.105(a)(1)'s time limit. Therefore, Defendant has established that it is entitled to summary judgment on Plaintiff's retaliation claim pursuant to the EEO's exhaustion requirement.

### B. Prima Facie Case

#### a. Count I: Race Discrimination

To establish a prima facie case of race discrimination, Plaintiff must show: "(1) [s]he was a member of a protected group; (2) [s]he was qualified to perform the job; (3) [s]he suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." *Xuan Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 958 (8th Cir. 2015).

At issue between the parties is whether Plaintiff experienced an adverse employment action. The Court finds that Plaintiff's allegations do not reach the adverse employment threshold because they do not result in a material change in employment such as change in salary, benefits, or responsibilities. *Cruzan v. Special Sch. Dist., No. 1*, 294 F.3d 981, 984 (8th Cir. 2002) ("[m]ere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action"). Plaintiff was not suspended, terminated, or disciplined, and her yearly evaluation for 2016 was positive. "Not everything that makes an employee unhappy is an actionable adverse employment action . . . an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 691 (8th Cir. 2001) (citations omitted). Minor changes in working conditions that inconvenience the employee or alter the employee's work responsibilities do not rise to the level of an adverse employment action. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). Further, "[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003). The failure to provide training and orientation as well as the inclusion of negative personnel reports and reprimands in a personnel file are not adverse employment actions. *Gilbert v. Des Moines Area Cnty. Coll.*, 495 F.3d 906, 917-18 (8th Cir. 2007). Similarly, a negative performance

review is not an adverse action if the employer does not use that review to alter the conditions of employment to the employee's detriment. *Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005).

Plaintiff also argues she was passed over for a promotion as a result of her race. Failure to receive a promotion is an adverse employment action. *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 410 (6th Cir. 1999). To succeed on a failure-to-promote race discrimination claim, Plaintiff must show: "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Jackson v. UPS*, 643 F.3d 1081, 1086 (8th Cir. 2011) (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996)). Plaintiff has made a prima facie case that she is a member of a protected group as a woman but does not make a prima facie case for the remaining elements. *Burns v. McGregor Elec. Indus., Inc.*, 955 F.2d 559, 564 (8th Cir. 1992). Plaintiff argues that she was "passed over for advancement opportunities" but does not provide any evidence that she submitted an application for a position, was rejected for that position, and a similarly situated candidate outside of the protected group received that position. Therefore, Plaintiff has not submitted a prima facie failure-to-promote race discrimination claim.

### b. Count II: Racially Hostile Work Environment

As found above, Plaintiff's hostile work environment claim fails because Plaintiff failed to exhaust her administrative remedies. Alternatively, Plaintiff has not met her burden to establish a prima face case of hostile work environment.

To succeed on a claim for racially hostile work environment, a plaintiff must show: "(1) that [she] is a member of a protected group; (2) that [she] was subjected to unwelcome harassment; (3) that the harassment was based on race; and (4) that the harassment affected a term, condition, or privilege of employment." *Anderson v. Family Dollar Stores of Arkansas*, 579 F.3d 858, 862 (8th Cir. 2009) (citation omitted). "Hostile work environment claims are limited in nature, requiring that the plaintiff's workplace is permeated with discriminatory intimidate, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008). Conduct must be so severe or pervasive that the conduct creates a hostile work environment viewed from an objective perspective. *Harris v. Forklift Systems*, 510 U.S. 17, 21

9

(1993). "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006) (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)). Racial slurs, without more, "do not render a work environment hostile as a matter of law." *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005). In *Singletary*, the Eighth Circuit elaborated as follows:

> Racial epithets are morally repulsive. But our cases require that a plaintiff show more than a few occurrences over a course of years. To be actionable, such conduct must be shown to occur with such frequency that the very conditions of employment are altered and be viewed by a reasonable person as hostile.

*Id.* The Court must look to the totality of the circumstances to determine whether a work environment is hostile. *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1102 (8th Cir. 2005). These factors include, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23).

Plaintiff is a member of a protected group because she is African American and female. *Burns*, 955 F.2d at 564. Plaintiff argues she and other African American colleagues were referred to as "black bitches" without specifying the frequency of such comments. Despite her arguments, Plaintiff has not shown that her complaints regarding the type of work assigned; workload amount, evaluation of work performed, quality of training provided, discussion of Plaintiff's performance with management, racial slurs, or the use of a counseling memorandum are acts of harassment.

Next, even if the Court were to determine that Plaintiff was harassed, Plaintiff has not shown that she was harassed based on her race. *See Nitsche*, 446 F.3d at 845-46 ("complaints attacking the ordinary tribulation of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing obtain no remedy") (internal quotations and citation omitted). This element is discussed more fully below in Section C.

Concerning the last element, even if the Court were to find that Plaintiff was harassed based on her race, Plaintiff's racially hostile work environment claim fails because the harassment did not affect a term, condition, or privilege of Plaintiff's employment. While the Court understands that Plaintiff likely faced a frustrating work situation, Plaintiff has not shown the harassment was "so severe or pervasive as to have affected a term, condition, or privilege of employment." *Bradley*

10

*v. Widnall*, 232 F.3d 626, 631-32 (8th Cir. 2000). "More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (internal quotation marks and citation omitted). *See Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 633 (8th Cir. 2016) ("[a] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment") (citation omitted); *Sutherland v. Mo. Dept. of Corr.*, 580 F.3d 748, 752 (8th Cir. 2009) (the court held the reclassification of performance from "highly successful" to "successful" not accompanied by reduction in pay, salary, benefits, or prestige does not affect a term, condition, or privilege of employment); *Recio v. Creighton Univ.*, 521 F.3d 934, 939-40 (8th Cir. 2008) (the court held that changes in work schedule, denial of opportunity to teach certain classes, maintenance of cold temperature in office, and faculty shunning did not constitute a detriment to a term, condition, or privilege of employment); *Clegg v. Ark. Dept. of Corr.*, 496 F.3d 922, 929 (8th Cir. 2007) (negative reports and reprimands to personnel file were insufficient to constitute a change in a term, condition, or privilege of employment).

Accordingly, Plaintiff has not established a prima facie case of racially hostile work environment because: (1) Plaintiff did not exhaust her administrative remedies, and (2) Plaintiff did not establish a prima facie case for the second, third, and fourth elements for a racially hostile work environment claim.

### c. Count III: Retaliation

Plaintiff's alleges that the adverse actions taken against her were motivated by Plaintiff's filing of the EEO Complaint. However, Plaintiff's retaliation claim fails because Plaintiff has not presented a prima facie case of retaliation.

"To establish a prima face case of retaliation, a plaintiff must show that (1) [she] engaged in statutorily protected activity; (2) an adverse employment action was taken against him . . . ; and (3) a causal connection exists between the two events." *Young v. Builders Steel Co.*, 754 F.3d 573, 579 (8th Cir. 2014) (internal quotations and citation omitted). Plaintiff has established she engaged in statutorily protected activity because she filed administrative charges with the EEOC against Defendant. *See id.* However, Plaintiff has failed to establish that she experienced an adverse employment action as discussed more fully above in Section C(a). *See Powell v. YellowBook USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) ("formal criticisms or reprimands that do not lead to a

11

change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII"). Accordingly, summary judgment for Defendant is appropriate regarding Plaintiff's retaliation claim.

### d. Count IV: Constructive Discharge

"To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in [her] situation would find the working conditions intolerable and (2) the employer intended to force [her] to quit." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007). "An employee must, however, grant [her] employer a reasonable opportunity to correct the intolerable condition before [she] terminates [her] employment." *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 724 (8th Cir. 2003) (internal quotation marks and citation omitted).

"To prove a constructive discharge, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit." *Blake v. MJ Optical Inc.*, 870 F.3d 820, 826 (8th Cir. 2017) (citation omitted). "This burden is substantial." *O'Brien v. Dep't of Agriculture*, 532 F.3d 805, 810 (8th Cir. 2008) (citation omitted). "The bar is quite high in [constructive discharge] cases." *Id.* at 810-11 (citation omitted). *See also Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (a workplace is intolerable in the context of constructive discharge cases where the conditions are "sufficiently extraordinary and egregious"). "The plaintiff can satisfy the intent requirement by demonstrating that he quit as a reasonably foreseeable consequence of the employer's discriminatory actions." *Howard v. Burns Bros.*, 149 F.3d 835, 841 (8th Cir. 1998). "A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable." *Id.* (citation omitted). "If an employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge." *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 574 (8th Cir. 1997). However, an employee must show that he or she gave the employer a reasonable chance to work out the problem to succeed on a constructive discharge claim. *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir. 1998).

In viewing the facts and evidence in the record most favorable to Plaintiff, Plaintiff has not shown that her working conditions were intolerable. The counseling memorandum, performance appraisal, occasional criticism, occasional alleged derogatory language, failure to receive an award, and lack of training are not sufficiently extraordinary or egregious that a reasonable person would find them intolerable. *See Hanenburg v. Principal Mutual Life Ins. Co.*, 118 F.3d 570, 575

12

(8th Cir. 1997) (while an employee provided evidence that "her supervisors scrutinized her behavior in the workplace more closely than it did other employees," the court held this was insufficient to create an intolerable working condition). Racial slurs, without more, "do not render a work environment hostile as a matter of law." *Singletary*, 423 F.3d at 893. Because the Court finds that Plaintiff has not established a prima facie case that her working conditions were intolerable, Plaintiff's constructive discharge claim fails. The Court need not address the remaining elements for the constructive discharge claim.

Independently, Plaintiff's constructive discharge claim fails because Plaintiff's hostile work environment claim failed. *See Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *affirmed*, 511 U.S. 244 (1994) ("[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment"). Here, Plaintiff's constructive discharge claim relies on the same facts, evidence, and allegations as Plaintiff's hostile work environment claim. *See Wilkie v. HHS*, 638 F.3d 944, 954 (8th Cir. 2011) (the court held the plaintiff's constructive discharge claim fails because it was based on the same allegations for the plaintiff's hostile work environment claim that also failed); *O'Brien*, 532 F.3d at 811 (a plaintiff has a higher evidentiary burden with a constructive discharge claim than required with an adverse employment action). Therefore, Plaintiff's constructive discharge claims fails.

### C. *McDonnell Douglas* Burden Shifting Framework

Last, Defendant argues summary judgment is appropriate even if Plaintiff has established a prima facie case for each claim because the decisions and actions by Plaintiff's supervisors were made for legitimate, nondiscriminatory purposes. The *McDonnell Douglas* burden shifting framework requires Plaintiff to first establish a prima facie case, and if Plaintiff establishes a prima facie case, Defendant must show the actions were made for nondiscriminatory purposes. 411 U.S. at 803. If Defendant articulated legitimate, nondiscriminatory reasons for the actions and decisions made, Plaintiff must show the explanations were pretextual. *Id. See also Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010)

> When a defendant articulates a legitimate, nondiscriminatory reason for employment decisions, a plaintiff "must present sufficient evidence to show both that the employer's articulated reason for the adverse employment action was false . . . the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

13

*Id.* (citation omitted).

While the Court finds that Plaintiff has not established a prima facie case for each claim, even if she had, Defendant provides legitimate, nondiscriminatory reasons for each incident. For instance, Defendant rebuts that, concerning Plaintiff's performance rating, Schwab testified that Plaintiff was given this rating because she merely met her performance standards. Schwab testified in her deposition that Plaintiff received a counseling memorandum because Plaintiff's performance did not meet expectations, and the counseling memorandum explained in detail the areas where Plaintiff's performance was unsatisfactory. Defendant states that Plaintiff was passed over for advancements due to her lower quality of performance. While Plaintiff complains her title changed and she was not allowed to participate in the boarding process, Defendant rebutted that Plaintiff is not entitled to boarding because only her position title was changing, Plaintiff had recently been trained, Plaintiff was provided with proper training materials, and Plaintiff was invited to weekly training meetings. Although Plaintiff argues she was given a greater workload due to her race, Defendant argues the increase in workload was the result of a staffing shortage. Plaintiff argues a white employee was not chastised for submitting work late when Plaintiff was chastised for submitting late work; however, Defendant submits that the white employee turned in the work before the deadline expired.

Here, Defendant has provided a legitimate, nondiscriminatory explanation for Defendant and Schwab's actions supported with evidence; therefore, the burden has shifted to Plaintiff to show "[b]y a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [discrimination or retaliation]." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (citations omitted). Plaintiff does not provide any evidence showing why Defendant's explanations are pretextual; therefore, Plaintiff has not met her burden.

Accordingly, even if the Court were to find that Plaintiff established a prima facie case for each claim, summary judgment in Defendant's favor is appropriate because Plaintiff has not satisfied her burden to show Defendant's explanations are pretextual.

## Conclusion

To summarize, the Court makes the following findings:

(1) Plaintiff's race discrimination claim (Count I) fails because Defendant has shown there is no genuine dispute of material fact that Plaintiff experienced an adverse employment action;

(2) Plaintiff's hostile work environment claim (Count II) fails because Plaintiff did not exhaust her administrative remedies and Plaintiff did not establish a prima facie case of a racially hostile work environment claim;

(3) Plaintiff's retaliation claim (Count III) fails because Plaintiff did not exhaust her administrative remedies and Defendant has shown there is no genuine dispute of material fact that Plaintiff experienced an adverse employment action; and

(4) Plaintiff's constructive discharge claim (Count IV) fails because Plaintiff did not establish a prima facie case that her working conditions were intolerable.

Therefore, after careful consideration and for the reasons above, the Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 24, 2019